UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BRANDON LEWIS,

    Plaintiff,

   v.              Case No. 23-C-492

JOLINE L. WUDTKE and
K. VASQUEZ,

    Defendants.

## SCREENING ORDER

  Plaintiff Brandon Lewis, who was incarcerated when he filed his complaint but has since been released, is representing himself in this 42 U.S.C. §1983 action alleging that his civil rights were violated. Lewis paid the $402 civil case filing fee on May 15, 2023. This matter comes before the Court to screen the complaint, as required by 28 U.S.C. §1983.

### SCREENING OF THE COMPLAINT

  The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient

to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

According to Lewis, on November 5, 2019, Joline Wudtke, an advanced care provider at the Milwaukee Secure Detention Facility (MSDF), diagnosed Lewis as having a low Vitamin D level. He asserts that, a few days later, she instructed him to take 8,000 IU of Vitamin D daily until his levels returned to normal. He further asserts that, on May 11, 2020, she discovered that his Vitamin D level came back higher than normal. Dkt. No. 1 at 3; Dkt. No. 1-1 at 6. According to documents that Lewis attaches to his complaint and relies on, after discovering his Vitamin D levels were higher than normal, Wudtke instructed Lewis to "stop taking the vitamin D supplement for 2 weeks and then resume with 2000 IU per day." Dkt. No. 1-1 at 24. According to a psychiatric progress note, Lewis did not receive Wudtke's letter, but he was informed of it on June 1, 2020,

2

and stated that he would stop the supplement as directed and then resume at a lower dosage in two weeks as instructed. *Id.* at 4.

According to Lewis, while at MSDF, he started to have bouts of dizziness. He does not assert when the bouts of dizziness started or how long they continued. According to the Department of Corrections online inmate locator, Lewis transferred to a different institution on August 3, 2020. It is unknown whether Wudtke continued to treat Lewis at the new institution. Lewis states that, on August 4, 2020, tests performed at Aurora West Allis Medical Center showed that he had a "mild decrease in kidney function." Dkt. No. 1 at 3. Lewis asserts that he was instructed to drink water to flush his kidneys of the vitamin. Dkt. No. 1-1 at 5.

Lewis states that he wrote to K. Vasquez, the MSDF health services manager, on February 5, 2022, to inform him of what had happened. Lewis states that "neither [he nor] his staff took the proper action to inform [Lewis] of [his] condition . . . or recommend that [Lewis] should stop taking the vitamin." Dkt. No. 1 at 3.

### THE COURT'S ANALYSIS

"[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks: 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition." *Id*. (quoting *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc)).

3

Case 1:23-cv-00492-WCG   Filed 05/26/23   Page 3 of 6   Document 8

Putting aside the question of whether a few bouts of dizziness and/or mild, short-term kidney impairment is an objectively serious medical condition, Lewis fails to state a claim against Wudtke because the Court cannot reasonably infer that she was deliberately indifferent to his condition. According to Lewis, after tests revealed he had a Vitamin D deficiency, she prescribed 8,000 IU of Vitamin D until his levels returned to normal. When she tested his levels again six months later, she noted that his levels were higher than normal, so she instructed him to stop taking the supplement for two weeks and then to resume at a much lower dosage. Wudtke's response to Lewis' test results do not demonstrate deliberate indifference to his condition; instead, her response demonstrates "a deliberate decision by a doctor to treat a medical need in a particular manner." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). Even if Wudtke's decision to have Lewis resume taking Vitamin D at a much lower dosage was not correct, "a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation." *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

Lewis highlights that he did not receive Wudtke's letter instructing him to stop taking Vitamin D at the higher dosage, but nothing in his complaint suggests that Wudtke knew he had not received it or that she was responsible for him not receiving it. And, in any event, he acknowledges that another provider informed him of the letter a few weeks later. Finally, Lewis asserts that Wudtke did not continue to monitor his levels, but Lewis was transferred to a different institution just a couple months after Wudtke sent her letter. Wudtke is not responsible for the treatment decisions made by other providers after Lewis left her care. *See Vance*, 97 F.3d at 991 (holding that §1983 requires a defendant to be personally involved in an alleged deprivation to be liable).

4

Nor does Lewis state a claim against Vasquez, the health services manager at MSDF who he complained to more than a year after he was transferred out of MSDF. There is no suggestion that Vasquez had any control over the treatment Lewis received at a different institution nor does it appear that he had knowledge of Wudtke's treatment decisions at the time she made them. The mere fact that Vasquez is a supervisor is not enough to establish liability. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (holding that the doctrine of respondeat superior cannot be used to hold a supervisor liable for the actions of a subordinate).

The Seventh Circuit has instructed that plaintiffs should be afforded an opportunity to amend their complaint. *See Zimmerman v. Bornick*, 25 F.4th 491, 493-94 (7th Cir. 2022). Accordingly, if Lewis believes he can cure the deficiencies identified in this decision, he may file an amended complaint by **June 23, 2023**. Lewis should draft his amended complaint as if he is telling a story to someone who knows nothing about his situation. This means that he should explain: (1) what happened to make him believe he has a legal claim; (2) when it happened; (3) who did it; (4) why; and (5) how the Court can assist him in relation to those events. Lewis should ensure that his amended complaint can be understood by someone who is not familiar with the facts of his case. If Lewis cannot cure the deficiencies identified in this decision, he need not take any further action.

Lewis is advised that an amended complaint replaces the original complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998). If an amended complaint is received, the Court will screen it as required by 28 U.S.C. §1915A. If an amended complaint is not received, the Court will dismiss this case based on Lewis' failure to state a claim in his original complaint.

**IT IS THEREFORE ORDERED** that on or before **June 23, 2023**, Lewis may file an amended complaint. If the Court does not receive an amended complaint by the deadline, it will dismiss this action based on his failure to state a claim in his original complaint.

**IT IS FURTHER ORDERED** that Lewis' motion for leave to proceed without prepayment of the filing fee (Dkt. No. 2) is **DENIED AS MOOT**, as his filing fee was paid in full.

**IT IS FURTHER ORDERED** that the Clerk's Office mail Lewis a blank prisoner amended complaint form and a copy of the guide entitled "Answers to Prisoner Litigants' Common Questions" along with this order.

**IT IS FURTHER ORDERED** that plaintiff must submit the original document for each filing to the Court to the following address:

> Honorable William C. Griesbach
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Lewis is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Green Bay, Wisconsin this  26th  day of May, 2023.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge